UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Frankie Lee Dash, *a/k/a Frank Lee Dash*, | ) C/A No. 9:17-1716-JMC-BM |
| Plaintiff, | ) |
| | ) **REPORT AND RECOMMENDATION** |
| vs. | ) |
| Associate Warden Sellers, Warden Eagleton, | ) |
| Defendants. | ) |

The Plaintiff, Frankie Lee Dash, also known as Frank Lee Dash, proceeding pro se and in forma pauperis, brings this action pursuant to 42 U.S.C. § 1983. He is an inmate at the Evans Correctional Institution, part of the South Carolina Department of Corrections (SCDC).

Under established local procedure in this judicial district, a careful review has been made of the pro se Complaint pursuant to the procedural provisions of 28 U.S.C. § 1915 and § 1915A, the Prison Litigation Reform Act, Pub.L. No. 104–134, 110 Stat. 1321 (1996), and in light of the following precedents: Denton v. Hernandez, 504 U.S. 25 (1992), Neitzke v. Williams, 490 U.S. 319 (1989), Haines v. Kerner, 404 U.S. 519 (1972), Nasim v. Warden, Maryland House of Corr., 64 F.3d 951 (4th Cir. 1995), and Todd v. Baskerville, 712 F.2d 70 (4th Cir. 1983). Pro se complaints are held to a less stringent standard than those drafted by attorneys, Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), and a federal district court is charged with liberally construing a pro se complaint to allow for the development of a potentially meritorious case. Erickson v. Pardus,



551 U.S. 89, 93 (2007) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555–56 (2007)); Hughes v. Rowe, 449 U.S. 5, 9 (1980).

However, even when considered pursuant to this liberal standard, for the reasons set forth herein below this case is subject to summary dismissal. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court. See Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990); see also Ashcroft v. Iqbal, 556 U.S. 662 (2009) [outlining pleading requirements under the Federal Rules of Civil Procedure].

## Discussion

Plaintiff alleges that he was placed in lock up for thirty-eight days (from February 1, 2017 through March 8, 2017) for no reason and without due process (he claims there was "no charge paper, no investigation"). Complaint, ECF No. 1 at 5. He has provided copy of a "Notice of Placement in PHD", indicating that he was placed in pre-hearing detention because his presence in the population would create a threat to the safety, security, and/or order of the institution. Plaintiff signed that he was given a copy of the notice within 72 hours of his placement in PHD. ECF No. 1-1 at 4. Plaintiff requests $1,000 for each day he was on lock up. ECF No. 1 at 6.

Plaintiff appears to be challenging his security or custody classification because he was placed in lock-up or PHD for approximately 36 days.[1] However, prisoners generally do not have a constitutionally recognized liberty interest in a particular security classification or prison placement. Hewitt v. Helms, 459 U.S. 460, 468 (1983)[no constitutional right under the Due Process

---

[1] Although Plaintiff asserts that he was on lock-up for 38 days, he also specifies that he was on lock up from February 1, 2017 to March 8, 2017, which is 36 days.



2

Clause to a particular security classification or prison placement]. In Sandin v. Conner, 515 U.S. 472, (1995), the United States Supreme Court held that a change in the condition of a prisoner's confinement that does not exceed the scope of the original sentence gives rise to a federally-protected liberty interest only if it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. at 483. In Sandin, the Court concluded that the plaintiff's "segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." Id. at 485. Hence, under the analysis set forth in Sandin, Plaintiff cannot show that he has a protected liberty interest in his security or custody classification. See id. at 483-85; see also Backey v. South Carolina Dep't. of Corrs., 73 F.3d 356, 1996 WL 1737 (4th Cir. Jan. 3, 1996)[allegations of wrongful placement in administrative segregation do not involve the kind of significant or atypical hardship necessary to invoke due process rights]; Joseph v. Gillespie, 73 F.3d 357, 1995 WL 756280 (4th Cir. Dec. 21, 1995)["Administrative segregation is not an 'atypical and significant hardship' relative to the ordinary incidents of prison life that would give rise to a liberty interest protected by any procedure."]; Reffritt v. Nixon, 917 F. Supp. 409, 412 (E.D.Va. 1996)[plaintiff has no protected interest in remaining in or being released into general population], aff'd, 121 F.3d 699 (4th Cir. 1997).

While the Fourth Circuit has held that a prisoner may set forth a viable due process claim relating to a custody status decision under some circumstances, Plaintiff has failed to set forth any facts sufficient to proceed on such a claim in this case. Cf. Incumaa v. Stirling, 791 F.3d 517 (4th Cir. 2015). To determine whether an "atypical and significant hardship" has been imposed, the Supreme Court has outlined a fact intensive inquiry into "(1) the magnitude of confinement



3

restrictions; (2) whether the administrative segregation is for an indefinite period; and (3) whether assignment to administrative segregation had any collateral consequences on the inmate's sentence." Incumaa, 791 F.3d at 530 (citing Wilkinson v. Austin, 545 U.S. 209 (2005)). Here, Plaintiff acknowledges that his period of placement in lock-up has ended so he is not challenging an ongoing, indefinite period; Plaintiff has not alleged any claims concerning the magnitude of confinement restrictions; and he has not alleged any collateral consequences to his sentence. Rather, he is simply challenging his placement in lock-up for a little more than a month. However, it is well established that a temporary assignment to segregated confinement—for thirty days or even six months, even with reduced privileges, few out-of-cell activities or socialization opportunities, and heightened security measures—is not an atypical or significant hardship. See Sandin, 515 U.S. at 485-86; Beverati v. Smith, 120 F.3d 500, 504 (4th Cir. 1997)[finding six months under conditions dictated by administrative segregation policies was not atypical under Sandin]. Moreover, Supreme Court precedent also mandates minimal court involvement "in the day-to-day management of prisons," and requires deference to the expertise of prison administrators in crafting procedures to maintain security and safety for their constituents and the public. Wilkinson v. Austin, 545 U.S. at 222 (citing Sandin, 515 U.S. at 482-83). Thus, the Supreme Court in Wilkinson and the Fourth Circuit in Incumaa found that conditions in segregated confinement triggered constitutional procedural protection only when they extinguished eligibility for parole and were extremely isolating, of indefinite duration, and without defined criteria for eligibility to transfer to less restrictive conditions. The facts alleged by Plaintiff here do not state a claim under these precedents.

Plaintiff may also be attempting to assert a claim that the Defendants did not follow certain SCDC policies or rules when placing him in lock-up. However, such allegations do not state



4

a constitutional claim. See Keeler v. Pea, 782 F. Supp. 42, 44 (D.S.C. 1992); cf. Johnson v. S.C. Dep't of Corrs., No. 06–2062, 2007 WL 904826, at *12 (D.S.C. Mar. 21, 2007)[The plaintiff's allegation that defendants did not "follow their own policies or procedures, standing alone, does not amount to a constitutional violation."](citing Riccio v. County of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1990)[if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue]. To the extent that Plaintiff is complaining about the proceedings utilized, only disciplinary proceedings which implicate a protected liberty interest demand due process. See Wolff v. McDonnell, 418 U.S. 539 (1974). However, to prevail on a due process claim, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by governmental action. Beverati v. Smith, 120 F.3d at 502. When the punishment does not cause the original sentence to be enhanced, protected interests will be generally limited to freedom from restraint that imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. Sandin v. Conner, 515 U.S. at 484 [holding that disciplinary segregation did not present the type of atypical, significant deprivation in which a state might create a liberty interest]. Here, Plaintiff has not alleged that he has suffered the loss of any good-time credits, or that he even received a disciplinary conviction.[2]

Additionally, to the extent Plaintiff requests monetary damages for mental anguish; ECF No. 1 at 6; there is no federal constitutional right to be free from emotional distress,

---

[2]Plaintiff's SCDC records also do not indicate Plaintiff suffered any disciplinary conviction (or any loss of good-time credits) as a result of the incident. See http://public.doc.state.sc.us/scdc-public/ [Search Inmate "Frank Dash", Number 175515]. This Court "may properly take judicial notice of matters of public record." See Philips v. Pitt Cnty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009); see also Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989) ["We note that '[t]he most frequent use of judicial notice is in noticing the content of court records.'"].



5

psychological stress, or mental anguish; hence, there is no liability for compensatory or punitive damages under § 1983 regarding such claims. See Grandstaff v. City of Borger, 767 F.2d 161 (5th Cir. 1985); Rodriguez v. Comas, 888 F.2d 899, 903 (1st Cir. 1989).

As for the two named Defendants, as employees of the SCDC they are entitled to Eleventh Amendment immunity in their official capacities as to any claims for monetary damages. The Eleventh Amendment to the United States Constitution divests this Court of jurisdiction to entertain a suit for damages brought against the State of South Carolina, its integral parts, or its officials in their official capacities, by a citizen of South Carolina or a citizen of another state. See Alden v. Maine, 527 U.S. 706 (1999); College Savs. Bank v. Florida Prepaid Educ. v. Halderman, 465 U.S. 89 (1984)[although express language of Eleventh Amendment only forbids suits by citizens of other States against a State, Eleventh Amendment bars suits against a State filed by its own citizens]; Alabama v. Pugh, 438 U.S. 781, 782 (1978); Will v. Michigan Dep't of State Police, 491 U.S. 58, 61-71 (1989); Edelman v. Jordan, 415 U.S. 651, 663 (1974)[stating that "when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its [Eleventh Amendment] sovereign immunity from suit even though individual officials are nominal defendants"](quoting Ford Motor Co. v. Dep't. of Treasury, 323 U.S. 459, 464 (1945)); see also Harter v. Vernon, 101 F.3d 334, 338-39 (4th Cir. 1996); Bellamy v. Borders, 727 F. Supp. 247, 248-50 (D.S.C. 1989); Coffin v. South Carolina Dep't of Social Servs., 562 F. Supp. 579, 583-85 (D.S.C. 1983); Belcher v. South Carolina Bd. of Corrs., 460 F. Supp. 805, 808-09 (D.S.C. 1978).

While the United States Congress can override Eleventh Amendment immunity through legislation, Congress has not overridden the states' Eleventh Amendment immunity in



6

§ 1983 cases. See Quern v. Jordan, 440 U.S. 332, 343 (1979). Further, although a State may consent to a suit in a federal district court, Pennhurst, 465 U.S. at 99 & n.9, the State of South Carolina has not consented to such actions. Rather, the South Carolina Tort Claims Act expressly provides that the State of South Carolina does not waive Eleventh Amendment immunity, consents to suit only in a court of the State of South Carolina, and does not consent to suit in a federal court or in a court of another state. S.C. Code Ann. § 15-78-20(e).

Finally, even if this case were to otherwise proceed, Warden Eagleton is entitled to summary dismissal as a party Defendant. Plaintiff only claims that the Defendant Associate Warden Sellers abused his authority by having him placed in lock-up. No allegations are asserted against the Defendant Eagleton. In order to proceed with a claim under § 1983, a plaintiff must affirmatively show that a defendant acted personally in the deprivation of his constitutional rights; Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977); and when a complaint contains no personal allegations against a defendant, that defendant is properly dismissed. See Karafiat v. O'Mally, 54 F. App'x 192, 195 (6th Cir. 2002); Curtis v. Ozmint, C/A No. 3:10–3053–CMC–JRM, 2011 WL 635302, at *4 n. 5 (D.S.C. Jan. 5, 2011), adopted by, 2011 WL 601259 (D.S.C. Feb. 11, 2011); Whaley v. Hatcher, No. 1:08CV 125–01–MU, 2008 WL 1806124, at *1 (W.D.N.C. Apr.18, 2008). Additionally, a § 1983 claim for supervisory liability (even assuming that is why Eagleton is named as a Defendant) cannot rest on the doctrine of respondeat superior. Carter v. Morris, 164 F.3d 215, 221 (4th Cir. 1999). Although there is a limited exception to the prohibition against imposing liability on supervisory personnel in § 1983 cases under the doctrines of respondeat superior or vicarious liability, see Slakan v. Porter, 737 F.2d 368, 370–75 (4th Cir. 1984), that exception does not operate to save Plaintiff's Complaint from dismissal for failure to state a claim against Eagleton, as the



Slakan exception requires factual allegations showing a "pervasive and unreasonable risk of harm from some specified source ..." coupled with allegations showing that the supervisor's "corrective inaction amounts to deliberate indifference or 'tacit authorization of the offensive [practices].'" Slakan, 737 F.2d at 373; see Shaw v. Stroud, 13 F.3d 791 (4th Cir. 1994).

### Recommendation

Based on the foregoing, it is recommended that the Court dismiss Plaintiff's Complaint without prejudice and without issuance and service of process. Plaintiff's attention is directed to the important notice on the next page.

Bristow Marchant
United States Magistrate Judge

November 14, 2017
Charleston, South Carolina

## Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

